UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
VIOLET V. MONTGOMERY,                                             :
                                                                  :
                              Plaintiff,                          :
                                                                  :          17-CV-6522 (JMF)
              -v-                                                 :
                                                                  :          MEMORANDUM OPINION
NEW YORK CITY TRANSIT AUTHORITY,                                  :          AND ORDER
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

  Violet V. Montgomery, an African American woman, brings this action against the New York City Transit Authority ("NYCTA"), alleging discrimination on the basis of her race and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; Section 1981 of the Civil Rights Act of 1871 ("Section 1981"), 42 U.S.C. § 1981; the New York State Human Rights Law (the "NYSHRL"), N.Y. Executive Law § 290 *et seq.*; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* NYCTA now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of Plaintiff's claims. For the reason that follow, NYCTA's motion is granted.

## BACKGROUND

  The relevant facts, taken from the Complaint and admissible materials submitted in connection with the pending motion, are either undisputed or viewed in the light most favorable to Montgomery. *See, e.g.*, *Downey v. Adloox Inc.*, No. 16-CV-1689 (JMF), 2018 WL 5266875, at *1 (S.D.N.Y. Oct. 23, 2018). Montgomery began working in the industry around May 1988 as an Associate Staff Analyst — either directly for NYCTA or for a separate entity, an issue that the

Court need not resolve. Docket No. 1 ("Compl.") ¶ 7; *see* Docket No. 26 ("Def.'s Mem."), 11-12. She holds a degree in civil engineering. Docket No. 34 ("Pl.'s 56.1 Counter-Statement"), ¶ 41.[1] After a series of merit-based promotions and reassignments, Montgomery was ultimately reassigned in June 2007 to a managerial position in Production Planning in the Central Electronics Shop, Maintenance Support, and Electronic Maintenance Division. Compl. ¶¶ 8-10.

On May 11, 2012, NYCTA posted a job opening for the position of General Superintendent of Automated Fare Collection ("AFC") Maintenance Operations in the Department of Subways (the "2012 Position"), and Montgomery applied. Pl.'s 56.1 Counter-Statement ¶¶ 47-48. Twenty-eight applicants were deemed qualified based on their applications and eight candidates were interviewed, including Montgomery. *Id.* ¶ 48. Interviews took place over two days before a panel consisting of Robert Moakler, John Weinberger, Barry Henry, and a non-voting representative from Human Resources. *Id.* ¶¶ 49-52.

Moakler, in his interview notes, stated that Montgomery "began to get loud" in response to a question about supervising staff. Docket No. 35 ("Kaufmann Reply Decl."), Ex. 24, at TA01433. The word "loud" was circled at least twice in Moakler's notes. *See* Docket No. 37 ("Def.'s Reply 56.1 Statement"), ¶ 96. The three voting members of the panel ranked the candidates, ranking Montgomery sixth, sixth, and fifth, respectively. *See* Docket No. 25 ("Kaufman Decl."), Ex. 17. Moakler and Weinberger ranked a white male named Robert Gorvetzian first; Henry ranked another male candidate first, Gorvetzian fourth, and Montgomery

---

[1]     Plaintiff's response to Defendant's Local Rule 56.1 Statement is replete with conclusory and argumentative statements, and assertions that "dispute" the accuracy of Defendant's own Local Rule 56.1 statement "without citation to conflicting testimonial or documentary evidence." *Kho v. N.Y. & Presbyterian Hosp.*, 344 F. Supp. 3d 705, 710 n.1 (S.D.N.Y. 2018). The Court can, and does, assume facts disputed in that way to be true. *Id.*; *see Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 393-97 (S.D.N.Y. 2015).

fifth. *See id.* Ultimately, the panel recommended that Gorvetzian, not Montgomery, be selected for the 2012 Position. *See* Pl.'s 56.1 Counter-Statement ¶ 56; Compl. ¶ 13-14. The 2012 Position, however, was subsequently withdrawn in response to anonymous complaints of favoritism and Equal Employment Opportunity ("EEO") violations. *See* Compl. ¶ 14; Pl.'s 56.1 Counter-Statement ¶ 56. NYCTA's Office of Equal Employment Opportunity conducted an investigation of the anonymous claims, ultimately determining that there was no EEO violation, but nevertheless recommending that the position be re-posted and that a new panel assess candidates. *See* Compl. ¶ 16; Pl.'s 56.1 Counter-Statement ¶¶ 56-65.

On January 10, 2014, NYCTA reposted essentially the same job opening (the "2014 Position"). *See* Pl.'s 56.1 Counter-Statement ¶ 8. The job responsibilities for the 2014 Position included "managing the maintenance operations for the electronic equipment" on NYCTA buses and "overseeing a maintenance workforce located in and dispatched throughout the five boroughs." *Id.* ¶ 9 (alterations omitted). Forty-six people applied for the 2014 Position, including three women. *Id.* ¶ 13. Seven of the applicants, including two women, were invited for an interview, and six applicants ultimately interviewed after one man withdrew from consideration. *Id.* ¶ 15. Montgomery and Gorvetzian, along with four other candidates, interviewed for the position. *Id.* ¶ 16. The interview panel consisted of Robert Moakler and John Weinberger, who served on the interview panel for the 2012 Position, as well as Deidre Taylor and one non-voting Human Resources professional. *See id.* ¶¶ 17, 51. The interview panelists took notes and scored each candidate based on the candidate's "knowledge of specific job skills, professional disposition, communication skills, related job experience, education, technical qualifications, and general overall interview." *Id.* ¶ 21; *see* Kaufman Decl. Ex. 6.

The panel's interview notes about Gorvetzian cited, among other things, his "thorough

3

knowledge" of AFC maintenance; his coherent and effective responses to questions; his proposals to address safety concerns; and his ability to provide details, examples, ideas, and suggestions. *Id*. at TA000069-72. Gorvetzian did not have a college degree, but had worked for NYCTA since starting as a clerk in 1983 and had been promoted to a managerial position in 1985, and then to several more managerial positions, including Station Manager, Assistant Chief Officer, Deputy Superintendent, and Superintendent, his position at the time of his application. Pl.'s 56.1 Counter-Statement ¶¶ 34-36. As Superintendent, Gorvetzian supervised seventy-nine employees and was responsible for overseeing the maintenance and operation of a variety of Brooklyn's operations within AFC. *Id*. ¶¶ 38-39. Ultimately, each panel member individually ranked Gorvetzian as the top choice for the 2014 Position. *Id*. ¶¶ 25-26. Montgomery does not dispute that "Gorvetzian was determined to be qualified" and was "selected as the best candidate." Pl.'s 56.1 Counter-Statement ¶ 44.

By contrast, Montgomery was deemed to be qualified for the 2014 Position, but not to be the best candidate. *See* Pl.'s 56.1 Counter-Statement ¶ 40. The panel's notes indicated that Montgomery was "more attuned to the review and analysis of data" than to supervision and management of staff. Kaufman Decl. Ex. 2. Her strengths, as described by Moakler, included "analytical" and "enthusiastic — very loud/thunderous." Kaufman Decl. Ex. 6, at TA000064. The panel described Montgomery's weaknesses as follows: "did not clearly address the questions with appropriate answers," "voiced concerns with delegating responsibility which is key to any operation," "[d]oesn't develop staff," and "[u]nable to properly convey her ideas and thoughts." *Id.* at TA000064-66. The panel members ranked Montgomery third, third, fourth, and fourth among the six candidates. *See* Pl.'s 56.1 Counter-Statement ¶ 31. A male applicant who held a business administration degree and had worked for NYCTA since 1988 received the same

4

rankings (that is, the two panel members who ranked Montgomery third ranked him fourth, and vice versa). *Id*. ¶¶ 29-30. Another male applicant who held a college degree in business administration and who had worked as a Superintendent for NYCTA since 2006 was unanimously ranked second by all members of the interview panel. *Id*. ¶¶ 27-28. Like Montgomery, each of these men was deemed qualified but not the best candidate who had applied. *Id*. ¶ 43.

In October 2014, Montgomery filed an administrative complaint with the Equal Employment Opportunity Commission (the "EEOC") alleging discrimination in relation to the 2014 Position. *See* Compl. ¶ 22; Pl.'s 56.1 Counter-Statement ¶ 73. Montgomery noted in her EEOC complaint the existence of a previous "working relationship" between Gorvetzian and two interviewers for both the 2012 Position and the 2014 Position, Moakler and Weinberger. *See* Pl.'s 56.1 Counter-Statement ¶¶ 73-74. Montgomery had also previously worked with both Moakler and Weinberger. *Id*. ¶ 75. The EEOC found that there was probable cause to believe that Montgomery was a victim of unlawful workplace discrimination based on her race and gender. *See* Compl. ¶ 25. Montgomery then brought this action.

## LEGAL STANDARDS

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

5

law." Fed. R. Civ. P. 56(a). A dispute over an issue of material fact qualifies as genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), which "will be satisfied if [it] can point to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Moreover, the non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## DISCUSSION

Montgomery alleges that, in failing to promote her, NYCTA discriminated against her on the basis of race and gender in violation of Section 1981, Title VII, the NYSHRL, and the NYCHRL. All of these claims are subject to the well-established three-step *McDonnell Douglas* burden-shifting framework. *See Nieblas-Love v. New York City Hous. Auth.*, 165 F. Supp. 3d 51, 65-66 (S.D.N.Y. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. For claims under Section 1981, Title VII, and the NYSHRL, that requires a showing that: (1) the plaintiff was a member of a protected class; (2) she was competent to perform the job in question or was performing the job duties satisfactorily; (3) she suffered a

materially adverse employment action; and (4) the action occurred under circumstances that give rise to an inference of discrimination. *See, e.g.*, *Jeune v. City of New York*, No. 11-CV-7424 (JMF), 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014). The same four prongs apply to claims under the NYCHRL, except that a plaintiff need not show that she suffered a materially adverse employment action; to establish a *prima facie* case, she need only demonstrate differential treatment that is "more than trivial, insubstantial, or petty." *Id.* (internal quotation marks omitted). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. If it does so, then the plaintiff can no longer rely on her *prima facie* case; instead, to prevail, she must show that the employer's action was in fact the result of discrimination. *See, e.g.*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010). More specifically, "[t]he plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000) (alterations and internal quotation marks omitted).

      With respect to the federal and state claims, the Court need not decide whether Montgomery has made out a *prima facie* case of discrimination because, even she has, her claims would plainly fail at the third step of the *McDonnell Douglas* analysis. *See Nieblas-Love*, 165 F. Supp. 3d at 66. NYCTA has undeniably satisfied its burden to articulate a legitimate, non-discriminatory reason for hiring Gorvetzian rather than Montgomery — namely, his managerial experience and his ability to articulate his plans for the division during his interview. *See* Pl.'s 56.1 Counter-Statement ¶¶ 26, 32-37, 44. And Montgomery points to no evidence in the record that would support a finding that NYCTA's reason was a "pretext for an impermissible

7

motivation" and that its failure to promote her "was more likely than not motivated, in whole or in part, by unlawful discrimination." *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000). In fact, Montgomery's substantive objection to summary judgment is limited to barely two pages of her brief, and rests almost exclusively on Moakler's use of the word "loud" to describe her. *See* Docket No. 31 ("Pl.'s Opp'n"), at 17-19. But even if, as Montgomery suggests, Moakler used the word "loud" in a coded manner that invoked racial or gender stereotypes, that word alone would not support the weight that she puts on it. *See, e.g.*, *Majied v. N.Y.C. Dep't of Educ.*, No. 16-CV-5731 (JMF), 2018 WL 333519, at *5 (S.D.N.Y. Jan. 8, 2018) ("[A] solitary, stray remark — and an ambiguous one at that — is insufficient to support an inference of discriminatory animus." (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)). And, in any event, the undisputed evidence makes plain that Moakler did not use the word in such a manner. To the contrary, he used it in expressing *support* for Montgomery's candidacy, and there is no evidence that it was held against her. *See* Kaufman Decl. Ex. 6, at TA000064.

More broadly, Montgomery points to no evidence that would support a factfinder's conclusion that NYCTA engaged in discrimination by choosing a less qualified candidate over her. Where a plaintiff seeks to prevent summary judgment by relying on a discrepancy in qualifications ignored by an employer, "that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001). "In effect," that requires the plaintiff to show that her credentials are "so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the

8

plaintiff for the job in question." *Id.* (internal quotation marks omitted). Montgomery does not come close to meeting that standard. The interview panel described Gorvetzian as the "ideal candidate" on the strength of his interview, in which he "demonstrated a clear understanding" of the job requirements, showed what he felt the goals and means to address those goals were within the division, and successfully highlighted his managerial experience. *See* Pl.'s 56.1 Counter-Statement ¶¶ 26, 32-37. The panel deemed Montgomery to be qualified as well, but not the best candidate available, Kaufman Decl. Ex. 2, and there is no basis in the record to second-guess that assessment.

In short, the lack of any evidence supporting an inference of discrimination or connecting any discrimination to the decision not to hire Montgomery is fatal to her claims under federal and state law. That leaves Montgomery's NYCHRL claim. Strictly speaking, that claim must be analyzed "separately and independently from any federal and state law claims . . . construing the NYCHRL's provisions broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks omitted). At the same time, a plaintiff claiming a violation of the NYCHRL must also point to facts giving rise to an inference that she suffered unequal treatment "because of" his or her protected characteristics. *See, e.g.*, *Johnson v. Andy Frain Servs., Inc.*, 638 Fed. App'x 68, 70-71 (2d Cir. 2016). Even under the more liberal NYCHRL standards, therefore, Montgomery's claim fails because she "has not shown that any of the complained-of conduct was the result of discrimination on the basis of" race or sex. *Macias v. Barrier Free Living, Inc.*, No. 16-CV-1735 (ER), 2018 WL 1603566, at \*8 (S.D.N.Y. Mar. 28, 2018); *see Nieblas-Love*, 165 F. Supp. 3d at 67 n.2 (granting summary judgment on claims under the NYCHRL even though "the NYCHRL is more protective than Title VII" and

the NYSHRL because, "even under the NYCHRL's more liberal standards, . . . a plaintiff still bears the burden of showing that the conduct complained of is caused by a discriminatory motive" (alterations and internal quotation marks omitted); *cf. Gayle v. Home Box Office, Inc.*, No. 17-CV-5867 (JMF), 2018 WL 2059657, at *4 (S.D.N.Y. May 1, 2018) (dismissing pendent state-law claims where there were "no *material* differences" between the federal and state legal standards (emphasis added)).

## CONCLUSION

For the foregoing reasons, NYCTA's motion for summary judgment is GRANTED, and Montgomery's claims are dismissed in their entirety.[2] The Clerk of Court is directed to terminate Docket No. 23 and to close this case.

SO ORDERED.

Dated: March 19, 2019
New York, New York

JESSE M. FURMAN
United States District Judge

---

[2] Accordingly, the Court need not and does not reach NYCTA's other arguments for summary judgment. Additionally, to the extent Montgomery properly moved to strike NYCTA's summary judgment motion or to reopen discovery, *see* Pl.'s Opp'n 11-15, those motions are denied as moot, as the Court did not rely on any of the materials that form the basis of Montgomery's objections, *see Coscarelli v. ESquared Hosp. LLC*, No. 18-CV-5943 (JMF), 2019 WL 400586, at *12 (S.D.N.Y. Jan. 31, 2019).